*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-FS-313

IN RE M.S., APPELLANT.

Appeal from the Superior Court of the
District of Columbia
(DEL-1678-14)

10/12/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

(Hon. Florence Y. Pan, Trial Judge)

(Argued June 1, 2016                                    Decided October 12, 2017)

*Daniel S. Harawa*, Public Defender Service, with whom *James Klein*, *Shilpa S. Satoskar* and *Samia Fam*, Public Defender Service, were on the brief, for appellant.

*John D. Martorana*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[+] THOMPSON, *Associate Judge*, and FERREN,[*] *Senior Judge*.

---

[+] Chief Judge Blackburne-Rigsby was an Associate Judge at the time of oral argument. Her status changed to Chief Judge on March 18, 2017.

[*] Senior Judge Warren R. King was on the panel at the time this case was argued. On November 23, 2016, Judge King retired and Senior Judge John M. Ferren replaced Judge King as a member of the panel.

BLACKBURNE-RIGSBY, *Chief Judge*: In this appeal, we are asked to determine whether three general sexual abuse offenses merge into the victim-specific offense of second-degree child sexual abuse. Appellant M.S., who was thirteen and fourteen years old during the relevant period, appeals his eight adjudications of delinquency arising from two instances of sexual contact with his younger male cousin, R.J. For each of the two sexual contacts, M.S. was adjudicated delinquent on four counts: second-degree child sexual abuse, D.C. Code § 22-3009; third-degree sexual abuse, D.C. Code § 22-3004; fourth-degree sexual abuse, D.C. Code § 22-3005; and misdemeanor sexual abuse, D.C. Code § 22-3006.[1] He argues that the Double Jeopardy Clause requires merger of his eight counts of sexual abuse into just two counts of second-degree child sexual abuse.

Based upon the plain language, structure, and legislative history of the Anti-Sexual Abuse Act of 1994 ("ASAA"), as well as our relevant case law, we hold that the offenses of misdemeanor sexual abuse and fourth-degree sexual abuse merge with the offense of second-degree child sexual abuse. However, we hold that the offense of third-degree sexual abuse, which requires proof of force, does

---

[1] Unless otherwise indicated, the D.C. Code citations herein refer to the 2013 Supplement.

not merge with second-degree child sexual abuse. Accordingly, we affirm in part and remand in part for merger consistent with this opinion.

## I. Factual Background

This case arises from two instances of sexual contact that appellant, who was thirteen and fourteen years old at the relevant times, initiated against his cousin, R.J., who was nine years old. R.J. frequently visited appellant in the spring and summer of 2014 to play video games. On August 9, 2014, while R.J. was playing "Minecraft," appellant made oral contact with R.J.'s genitals through his pants. He then forced R.J. to lie down, and appellant sat on him to force oral contact with appellant's genitals through his clothing. The activity stopped when R.J.'s father called him downstairs to leave. R.J. described the sexual contact to his father during the drive home, and at some point, it became clear that similar contact between M.S. and R.J. had occurred before. The trial court credited R.J.'s explanation for not reporting sooner: that he did not want to lose access to the better television and game system at appellant's home.

After R.J. described the incident to his father, on August 9, R.J.'s father immediately drove back to appellant's home and angrily confronted him.

Appellant's mother was also present and asked appellant more calmly about the incidents because she wanted to get him help. After initial denials, appellant admitted to sexual contact with R.J. on August 9, 2014, and on at least one prior occasion, during that spring or summer, after appellant's family bought a "smart TV" in March 2014.

The trial court found that at least two instances of sexual contact occurred, that appellant was at least four years older than R.J. at those times, and that appellant intended to gratify sexual desire through his conduct with R.J. Significantly, the trial court also found: (1) that, in accordance with the third-degree sexual abuse charge, appellant had used force by sitting on R.J., (2) that, in accordance with the fourth-degree sexual abuse charge, appellant had reason to know that R.J. could not appraise the nature of the conduct, and (3) that, in accordance with the misdemeanor sexual abuse charge, R.J. did not consent to the sexual contact. Appellant was adjudicated delinquent on all eight counts (four counts for each incident) and was sentenced to one year of probation, including group therapy and ninety hours of community service. This appeal followed.

## II. Analysis

The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) (citation and internal quotation marks omitted); *see also United States v. Mahdi*, 598 F.3d 883, 887 (D.C. Cir. 2010) (citation omitted). To determine whether convictions merge, we apply the default rule articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact the other does not." *See* D.C. Code § 23-112 (2012 Repl.); *Byrd v. United States*, 598 A.2d 386, 389–90 (D.C. 1991) (en banc) (adopting *Blockburger*, in light of D.C. Code § 23-112 (1989), over a "pure fact-based analysis"). The *Blockburger* analysis applies unless the legislature has clearly indicated a contrary intent with respect to the particular offense at issue. *See Byrd, supra*, 598 A.2d at 389; *Blackledge v. United States*, 871 A.2d 1193, 1196 (D.C. 2005).

Appellant argues that merger of his sexual abuse adjudications is required both under the *Blockburger* test and as a matter of legislative intent.[2] The government counters that each crime contains a unique element on its face, precluding merger under *Blockburger*, and that the legislative history of the ASAA indicates that all four sexual abuse charges may be brought for the commission of a single act.

All four of the criminal code provisions under which appellant was charged were enacted under the ASAA in 1994. *See* D.C. Council, Report on Bill 10-87 (Sep. 28, 1994). The Council of the District of Columbia ("D.C. Council" or "Council") stated that the purpose behind the ASAA was to "strengthen and reform the existing laws against rape and sexual abuse in the District of Columbia." *Id.* at 1. In line with this purpose, the ASAA "modernize[d] the District's antiquated rape and sexual assault laws" by "creating graded offenses for sexual assaults of varying [degrees of] severity[.]" *Id.* at 2. In addition to creating graded forms of sexual abuse, the Council also grouped the sex offenses into different categories.

---

[2] Preliminarily, we observe that the merger protection of the Double Jeopardy Clause applies equally in juvenile delinquency proceedings and adult criminal prosecutions. *See Breed v. Jones*, 421 U.S. 519, 530–31 (1975); *see also In re Z.B.*, 131 A.3d 351, 354–55 (D.C. 2016) (considering a merger claim in a juvenile delinquency appeal). Moreover, a juvenile may raise a merger claim because a delinquency disposition may carry "penal consequences for an offender later in life." *H.M. v. State*, 892 N.E.2d 679, 682 (Ind. Ct. App. 2008).

Relevant here, the first category of the ASAA consists of general sexual abuse offenses, which do not require a specific victim, while the second category of the ASAA addresses sexual abuse against children[3] and minors in particular. *See* D.C. Code §§ 22-3002 to 22-3006 (general sexual abuse offenses); 22-3008 to 22-3010.02 (sexual abuse offenses against children and minors); *Davis v. United States*, 873 A.2d 1101, 1104 (D.C. 2005).

Upon reviewing the legislative history of the ASAA, we see no clear expression of the D.C. Council's intent as to whether or not the crimes of the ASAA should merge. While the Council stated in its Committee Report for the ASAA that it sought to "make the laws governing sexually abusive conduct more inclusive, flexible[,] and reflective of the broad range of abusive conduct which does in fact occur," Rep. on Bill 10-87 at 1, this expression by the Council does not indicate whether it intended to allow multiple convictions based upon the same act. Neither does the Council's creation of "graded offenses for sexual assaults" and its separation of the sexual assault offenses into different categories, indicate whether the Council intended that each instance of sexual conduct would be prosecuted as

---

[3] Under the ASAA, a "child" is "a person who has not yet attained the age of 16 years." D.C. Code § 22-3001 (2012 Repl.).

just one corresponding offense even if it satisfies the elements of other ASAA offenses.[4]

Furthermore, the D.C. Council has not provided explicit guidance on merger of offenses under the ASAA, as it has done in other contexts. *See, e.g.*, D.C. Code § 22-3203 (a) (2012 Repl.) (providing for multiple convictions for theft, identity theft, fraud, credit card fraud, unauthorized use of a vehicle, commercial piracy, and receiving stolen property, but only concurrent sentences). Thus, because the Council's intent on merger of offenses under the ASAA is not clear, we must analyze each offense at issue under the *Blockburger* test. *See Parker v. United States*, 692 A.2d 913, 916 (D.C. 1997) (quoting *Missouri v. Hunter*, 459 U.S. 359, 367–68 (1983)) (emphasis in original) (stating that the *Blockburger* test is applied to determine merger of offenses unless there is "*a clear indication of contrary legislative intent*").

---

[4] The legislative history of the 2006 amendment to the ASAA, enacted as part of the Omnibus Public Safety Act of 2006, also does not indicate the Council's intent on whether offenses under the ASAA should merge. In the amendment, the D.C. Council expanded the definition of "significant relationship" with a minor and created a new crime for "misdemeanor sexual abuse of a child." D.C. Council, Report on Bill 16-247, at 11 (Apr. 28, 2006). The Council's comment about the new misdemeanor offense—"It is the Committee's intent that prosecutors only employ [the new misdemeanor sexual abuse of a child] charge when appropriate." — is not particularly helpful even in determining the "appropriate" scope of the new law. *See id*. The comment does not indicate whether the Council intended merger of offenses from the original enactment of the ASAA.

## A. The *Blockburger* Test

When applying the *Blockburger* test, we compare the elements of the relevant offenses to determine "whether each provision requires proof of a fact the other does not." 284 U.S. at 304; *see also Byrd, supra*, 598 A.2d at 389. Both parties claim to prevail under the *Blockburger* analysis by applying the test differently. The government focuses solely on the language of the elements of each offense. Appellant instead asks whether it is possible to commit one crime without committing the other. The latter approach reflects the correct application of *Blockburger*. *See, e.g.*, *Z.B., supra* note 2, 131 A.3d at 355 ("[I]t is not possible to commit robbery without also committing assault, and assault accordingly merges as a lesser-included offense").

For example, in *Tyree v. United States*, 629 A.2d 20, 22–23 (D.C. 1993), we considered whether the crimes of carrying a pistol without a license ("CPWL") and possession of an unregistered firearm ("UF") merge. Observing that one could potentially have a non-pistol firearm that was not properly registered stored within her own home (thus committing UF without committing CPWL) and that, conversely, one could carry a registered pistol on the streets without a proper license (thus committing CPWL without committing UF), we concluded that the

crimes did not merge under *Blockburger*. *Id*. Thus, the facial comparison of the elements was supplemented by a practical inquiry into whether it was possible to commit one offense without at the same time committing the other offense. *See also Snell v. United States*, 68 A.3d 689, 694 (D.C. 2013) (reaffirming holding of *Tyree*). On the other hand, in *Hawkins v. United States*, we considered whether a count of obstruction of justice for influencing truthful testimony should merge with another count of obstruction for causing or inducing a person to withhold truthful testimony. 119 A.3d 687, 703 (D.C. 2015), *cert. denied sub nom. Verter v. United States*, 136 S. Ct. 1526 (2016). We concluded that the two counts merged because "telling a lie *necessarily* includes withholding the truth[,] too, so a person who 'influences' truthful testimony under [D.C. Code § 22-722 (a)(2)(A)] by instructing a person to lie will violate [D.C. Code § 22-722 (a)(2)(B)] as well." *Id*. (emphasis added).

This is not to say that *Blockburger* precludes multiple convictions for a single act; it is axiomatic that the same act can give rise to multiple convictions so long as each crime has a unique element. *See, e.g.*, *Richardson v. United States*, 116 A.3d 434, 439–40, 439 n.2 (D.C. 2015) (stating that the fact-based merger inquiry, in which we looked to whether one crime was "incidental" to another to determine if the offenses merged, had been overruled by *Byrd*). Nevertheless, "a

lesser offense will merge into a greater offense if guilt of the lesser offense 'is necessarily established by proof of the greater offense.'" *Ball v. United States*, 429 A.2d 1353, 1360 n.13 (D.C. 1981) (quoting *Fuller v. United States*, 407 F.2d 1199, 1228 (D.C. Cir. 1968) (en banc)).  As a result, the *Blockburger* test examines the elements of the crimes, *see Byrd, supra*, 598 A.2d at 390 (asking "whether each statutory provision required proof of an element that the other did not"), with the purpose of ascertaining whether it is possible to fulfill the elements of one offense without fulfilling the elements of the other offense.  *See Norris v. United States*, 585 A.2d 1372, 1374 (D.C. 1991).   With this understanding of the proper application of the *Blockburger* test, we turn now to whether appellant's general sexual abuse counts merge into his two counts of second-degree child sexual abuse.

### B.  Application of *Blockburger* to the ASAA Crimes at Issue

Second-degree child sexual abuse requires proof of three elements:  (1) that the defendant was "at least 4 years older than [the] child" at the time of the offense, (2) that the defendant "engage[d] in sexual contact with that child or caus[ed] the

child to engage in sexual contact[,]"[5] and (3) that the defendant did so "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire." *See* D.C. Code §§ 22-3009, -3001 (9); *Green v. United States*, 948 A.2d 554, 558 (D.C. 2008). The other three offenses at issue, being general sexual abuse offenses, are not "victim-specific," so they do not require proof that the sexual contact was with a child at least four years younger than the defendant.

*Blockburger* requires us to compare the elements of second-degree child sexual abuse with the elements of (1) misdemeanor sexual abuse, (2) fourth-degree sexual abuse, and (3) third-degree sexual abuse, in order to ascertain whether it is possible to commit the first offense, without committing the last three offenses. *See* Appendix A ("Table of Elements of the ASAA Crimes at Issue"). In doing so, we also consider whether the traditional presumptions of non-consent (premised on a child's incapacity to consent) and use of force in child sexual abuse prosecutions were retained by the ASAA. *See e.g.*, *Davis, supra*, 873 A.2d at 1104–05 (discussing the historical presumptions of force and non-consent for sexual assaults committed against children).

---

[5] For all relevant charges, "sexual contact" includes the touching of genitalia through clothing as occurred in this case. D.C. Code § 22-3001 (9).

### 1. **Misdemeanor Sexual Abuse**

Misdemeanor sexual abuse requires proof of three elements:  (1) that the defendant "engage[d] in a sexual act or sexual contact with another person[,]" (2) while knowing or having reason to know "that the act was committed without that other person's permission" and (3) "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire."  D.C. Code §§ 22-3006, 22-3001 (9). The critical question we examine is whether proof that the victim was a child at least four years younger than the defendant, as required for second-degree child sexual abuse, triggers a conclusive presumption that the victim did not give permission.

We have previously addressed the intersection of second-degree child sexual abuse and misdemeanor sexual abuse, albeit indirectly, in *Davis v. United States*.  In that case, Davis was convicted of attempted misdemeanor sexual abuse for engaging in sexual conduct with his eleven-year old daughter, although this court acknowledged that he could have been convicted of second-degree child sexual abuse.  873 A.2d at 1103, 1105 n.7.  Davis argued on appeal that because § 22-3007 of the ASAA makes the consent defense available for misdemeanor

sexual abuse, he should have been permitted to demonstrate as a defense that his daughter consented to the sexual contact. *Id.* at 1105.[6]

We rejected that argument, concluding that § 22-3011 of the ASAA, which expressly precludes a consent defense for child sexual abuse offenses, demonstrated the Council's intent to "preserve[] the longstanding rule that a child is legally incapable of consenting to sexual conduct with an adult." *Id.* at 1104–05. We noted that the basis for this historical rule is "that children cannot consent 'in a meaningful way,' because they 'do not understand what is happening to them.'" *Id.* at 1105 (quoting *Williams v. United States,* 756 A.2d 380, 386 (D.C. 2000), and *Guarro v. United States,* 237 F.2d 578, 581 (D.C. Cir. 1956)). Furthermore, we observed from the Council's Committee Report on the ASAA that the Council continued to view "sexual conduct between adults and children as 'inherently coercive due to the age difference between the participants.'" *Id.* (citing Rep. on Bill 10-87 at 4.). Accordingly, we held that "if the complainant in a misdemeanor sexual abuse (or other general sexual assault) prosecution was a child at the time of the alleged offense, an adult defendant who is at least four years older than the

---

[6] "Consent by the victim is a defense to a prosecution under §§ 22-3002 to 22-3006 . . . ." D.C. Code § 22-3007. In other words, consent is only a defense to general sexual assault crimes (first-degree sexual abuse down to misdemeanor sexual abuse), not to victim-specific sexual assault crimes such as second-degree child sexual abuse.

complainant may not assert a 'consent' defense." *Id.* at 1106.[7]   Importantly, in *Davis* we stated further, "[b]y the same token, unless he was deceived, the defendant is charged with knowledge that the sexual act or contact was committed without the child's valid 'permission' within the meaning of D.C. Code § 22-3006." *Id.*

Our holding in *Davis* makes clear that proof of at least a four-year age gap between the defendant and a child victim of sexual assault itself constitutes proof of the second element of misdemeanor sexual abuse: that the sexual contact was committed without the child's valid permission.  *See* D.C. Code § 22-3006.   In such circumstances, the Council has deemed the sexual contact between the defendant and child as "inherently coercive."   *Davis, supra*, 873 A.2d at 1105 (internal quotation marks and citation omitted).   Therefore, every set of facts satisfying the elements of second-degree child sexual abuse will also necessarily satisfy the elements of misdemeanor sexual abuse.[8]   This result is further supported

---

[7] Although *Davis* discusses an "adult defendant" and the consent defense, nothing in that decision or in the text of the ASAA suggests an exception for juveniles who sexually assault much younger juveniles.  We discern no reason (and the parties have not advanced one here) that *Davis* would not apply to this case because appellant is a juvenile.

[8] Our conclusion here is not foreclosed by our statement in *Sutton v. United States*, 140 A.3d 1198, 1205 (D.C. 2016), that misdemeanor sexual abuse of a child

(continued . . .)

by the Council's intent that the ASAA remain "consistent with existing law governing indecent acts with children," at least where applying the pre-existing legal presumption that a child cannot consent to sexual contact. 873 A.2d at 1105 (citing Rep. on Bill 10-87 at 4).[9] As a result, misdemeanor sexual abuse is a "lesser-included offense" of second-degree child sexual abuse, because one cannot commit second-degree child sexual abuse without committing misdemeanor sexual abuse. *See Z.B., supra* note 2, 131 A.3d at 355. Specifically, when there is a four or more-year age gap between the defendant and the child victim of sexual assault, coercion is presumed—triggering a conclusive presumption that the sexual contact was committed without the child's permission. Accordingly, appellant's second-degree child sexual abuse adjudications and his misdemeanor sexual abuse adjudications merge.

_____

(. . . continued)
and attempted misdemeanor sexual abuse are different offenses under *Blockburger* because the former "has age requirements for the victim and perpetrator" while the latter "has a knowledge-of-lack-of-consent requirement." This assertion was merely dictum, as our ultimate holding that the defendant's convictions for the two offenses should not merge in that case was based upon our recognition that the defendant's convictions were not based upon a single continuous act, but were instead based upon two separate acts. *See id.* at 1206 (holding that "the criminal conduct on which each [of the defendant's] conviction[s] was predicated represented a discrete act for which [the defendant] could be punished separately").

[9] *Davis* acknowledges that the ASAA abrogated the traditional rule that a child is incapable of consenting to sexual contact in circumstances in which there is less than a four year age gap between the child and defendant. 873 A.2d at 1105 n.8. In such circumstances, a *bona fide* consent defense is permitted. *Id.*

## 2. Fourth-Degree Sexual Abuse

We now consider whether fourth-degree sexual abuse merges with second-degree child sexual abuse. Fourth-degree sexual abuse requires proof of three elements: (1) that the defendant "engage[d] in or cause[d] sexual contact with or by another person[,]" (2) while knowing or having reason to know that the other person was "incapable of appraising the nature of the conduct"[10] and (3) "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire." D.C. Code §§ 22-3005 (2)(A), -3001 (9). The critical question we examine is whether proof that the victim was a child at least four years younger than the defendant, as required for second-degree child sexual abuse, triggers a conclusive presumption that the child was incapable of appraising the nature of the conduct.

Our holding in *Davis* that the ASAA retains the conclusive presumption that children cannot consent to sexual contact, at least where the defendant is at least

---

[10] This second element of fourth-degree sexual abuse may also be satisfied by a showing that the defendant knew or had reason to know that the other person was "[i]ncapable of declining participation in that sexual contact;" or "[i]ncapable of communicating unwillingness to engage in that sexual contact[.]" D.C. Code § 22-3005 (2)(B)–(C). However, only the showing that the other person was "incapable of appraising the nature of the conduct" is relevant to this appeal. § 22-3005 (2)(A).

four years older than the child, is also a helpful guide for our analysis here. *See* 873 A.2d at 1105–06 & n.8. We explained that this conclusive presumption was founded upon the notion that "children 'do not have the capacity to consent to intimate sexual touching[,]'" *id*. at 1105 (quoting *Jenkins v. United States*, 506 A.2d 1120, 1123 (D.C. 1986)) because child victims "do not understand what is happening to them" during sexual contact, *id*. (quoting *Guarro, supra*, 237 F.2d at 581). Thus, the result in *Davis* — that a defendant "at least four years older than the complainant" is "charged with the knowledge that the sexual act or contact was committed without the child's valid 'permission'" — is inextricably tied to the notion that a child is incapable of understanding the nature of sexual contact. *Id*. at 1106.

Our reasoning in *Davis* is consistent with the long line of cases employing a presumption that children cannot consent to sexual contact. The presumption is not literal (i.e., that a child cannot form the words to express consent); it is instead based upon a child's lack of experience with sexual contact, which necessarily dictates that consent cannot be meaningfully given, as well as the need to protect children from undue pressure from older partners. For example, in *Williams v. United States,* involving sexual contact between a thirty-five year old defendant and fourteen-year old child, this court stated "[w]hile it is true that [the child

victim] may have been a willing participant, when an age gap . . . exists, the minor cannot consent to sexual [contact] in a meaningful way." 756 A.2d 380, 386 (D.C. 2000). Similarly, in *Beausoliel v. United States*, the D.C. Circuit held that "[y]oung girls" cannot consent to sexual contact, explaining that they are "within the necessary protection of the law" in order to avoid "persons [from taking] advantage of their ignorance and inexperience[.]" 107 F.2d 292, 296 (D.C. Cir. 1939). Thus, the presumption that child victims cannot consent is interwoven with an underlying rationale that children, by virtue of their youth and inexperience, do not understand sexual conduct, and therefore are in need of protection from coercive sexual contact.

When the Council developed the ASAA, the Council defined new crimes that went beyond crimes that existed when the presumptions of force and non-consent for sexual contact with children developed. *See Ballard v. United States*, 430 A.2d 483, 485–86 (D.C. 1981) (explaining the crimes of "rape," which protected adults from forcible, non-consensual sexual acts, and "carnal knowledge," which protected female children under the age of sixteen by presuming force and non-consent). Fourth-degree sexual abuse is one of the new sexual assault crimes, which criminalizes sexual contact with a person "incapable of appraising the nature of the conduct." D.C. Code § 22-3005. In a case

involving an adult victim, the charge might involve proof of the victim's intoxication or general mental incapacity. *See, e.g.*, *Thomas v. United States*, 59 A.3d 1252, 1255 (D.C. 2013) (recounting defendant's act of sexually touching a drunk, sleeping adult victim who awoke "alarmed and confused," giving rise to a fourth-degree sexual abuse charge). However, in a fourth-degree sexual abuse case involving a child victim (at least four years younger than the defendant), additional proof would be redundant because the ASAA retains the notion that children lack the capacity to understand the nature of sexual conduct. *See Davis, supra*, 873 A.2d at 1105 ("The drafters [of the ASAA] viewed sexual conduct between adults and children as 'inherently coercive due to the age difference between the participants.'") (quoting Rep. on Bill 10-87 at 4)).

The rationale underlying the presumption that children cannot consent, in our view, readily extends to the additional proof required for fourth-degree sexual abuse. We have held that child victims are unable to meaningfully consent to sexual contact with an older person because they "do not understand what is happening to them." *See Parnigoni v. District of Columbia*, 933 A.2d 823, 827 (D.C. 2007) (citation and internal quotation marks omitted); *Guarro, supra*, 237 F.2d at 581. Thus, it necessarily follows that if a child victim does not understand what is happening during sexual contact, then he/she is also "incapable of

appraising the nature of the [sexual conduct]" with an older person, as required for fourth-degree sexual abuse.  D.C. Code § 22-3005 (2)(A).  It would be inconsistent for this court to require merger of misdemeanor sexual abuse with second-degree child sexual abuse, on the basis that the law conclusively presumes that child victims cannot meaningfully consent, but to preclude merger of fourth-degree sexual abuse with second-degree child sexual abuse.   This is because the presumption that child victims cannot consent to sexual contact with older partners is based upon the child victims' inability to appraise the nature of the sexual contact in such circumstances.   *See Davis, supra*, 873 A.2d at 1105–06.  Accordingly, due to the historical premise that children do not understand what is happening during sexual contact, every act giving rise to a second-degree child sexual abuse charge will, by virtue of the age gap between the child victim and the defendant, also involve a child victim who is "incapable of appraising the nature of the conduct" within the meaning of D.C. Code § 22-3005.

Moreover, we note that proving a distinct, unmerged fourth-degree sexual abuse charge based upon a particular child victim's inability to appraise the nature of sexual contact would require an inquiry into the victim's sexual experience or knowledge.  Such an inquiry would require evidence that may be excluded by the

"Rape Shield Law," a protection for victims that was also enacted by the ASAA.[11]

"The Rape Shield Law was enacted as a safeguard against unwarranted invasions of privacy and also serves to exclude largely irrelevant evidence that may distract the jury or lead it to discount the complainant's injury because of societal stereotypes and prejudices." *Scott v. United States*, 953 A.2d 1082, 1089 (D.C. 2008). Evidence of a victim's "sexual sophistication or private sexual behavior" is precisely the sort of evidence that the Rape Shield Law seeks to exclude, except where absolutely necessary. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1105 (9th Cir. 2002).

Arguably, *some* older children may be able to understand sexual contact. This is something that the Council also recognized, but *only* as it pertained to sexual contact between children of similar ages. In the ASAA's Committee Report, the Council explained that in creating the four-year age gap requirement

---

[11] The Rape Shield Law excludes from sexual abuse cases "reputation or opinion evidence of the past sexual behavior of an alleged victim[.]" D.C. Code § 22-3021 (2012 Repl.). The Law also excludes "evidence of a victim's past sexual behavior other than reputation or opinion evidence" unless the defendant demonstrates (1) that the evidence is relevant, (2) that its probative value outweighs "the danger of unfair prejudice," and (3) that the evidence either reflects prior sexual behavior with the defendant where consent of the victim is at issue; indicates that the source of semen or bodily injury is from a person other than the defendant; or "is constitutionally required to be admitted." D.C. Code § 22-3022 (a)–(b) (2012 Repl.).

for child sexual assault offenses, it was "recognizing but not *condoning* the sexual curiosity which exists among young persons of similar ages."  Rep. on Bill 10-87 at 15 (emphasis added).  In line with this statement, we acknowledged in *Davis*, that the ASAA slightly modifies the traditional rule that a child is incapable of consenting to sexual contact, by making the consent defense available in cases in which the sexual assault victim is a child, but there is less than a four-year age difference between the child and the defendant.[12]

We conclude that the Council intended, as a policy matter, to continue to protect children as a class from undue pressure from an older partner.  *See, e.g.*, *Davis, supra*, 873 A.2d at 1105 ("The purpose of the law [regarding sexual conduct] thus has long been to protect children . . . .")  (citation omitted); Rep. on Bill 10-87 at 15 (referring to sexual conduct involving a child and a defendant that is more than four years older than the child as "inherently coercive").  The Council was willing to permit a *bona fide* consent defense in sexual assault cases in which there is less than a four-year age difference between the defendant and child, but not in cases in which there is a four or more-year age gap between the defendant

---

[12] *See Davis, supra*, 873 A.2d at 1105 n.8 ("By adopting the four-year age differential as an element of the child sexual abuse provisions, it appears that the ASAA does modify the traditional rule so as to allow *bona fide* consent of a child victim to be a potential defense where the defendant is less than four years older than the child.").

and child. Accordingly, once the government proves in a sexual assault case that the defendant was four or more years older than the child victim, there is a conclusive presumption that the defendant knew or should have known that the child was incapable of appraising the nature of the sexual conduct.

This result is in line with our holding in *Davis*, and also furthers the purpose of our Rape Shield Law. In sum, when comparing the elements of the crimes as required by *Blockburger* and recognizing a conclusive presumption that a child who is at least four years younger than the defendant has an "inability to appraise the nature of the [sexual contact]," D.C. Code § 22-3005 (2)(A), we hold that it is impossible to commit second-degree child sexual abuse without also committing fourth-degree sexual abuse. Therefore, appellant's fourth-degree sexual abuse adjudications merge into his second-degree child sexual abuse adjudications.

### 3. Third-Degree Sexual Abuse

Third-degree sexual abuse requires proof of three elements: (1) that the defendant "engage[d] in or cause[d] sexual contact with or by another person, (2) "[b]y using force against that other person[,]" and (3) "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire." D.C. Code §§ 22-

3004 (1), -3001 (9). The critical question we examine is whether proof that the victim was a child four or more years younger than the defendant, as required for second-degree child sexual abuse, triggers a conclusive presumption that the defendant used force.

Third-degree sexual abuse, which requires use of force, is a step removed from the extensive discussion in *Davis* regarding a child victim's inability to consent to sexual contact, because force and non-consent are generally understood to be independent aspects of a sexual assault. Prior to the ASAA, "when a child under the age of consent [was] involved[,] the law conclusively presume[d] force and the question of consent [was] immaterial." *Davis, supra*, 873 A.2d at 1105 (quoting *United States v. Jones*, 477 F.2d 1213, 1218 (D.C. Cir. 1973)). However, through the ASAA, the Council created a new statutory scheme for sexual assault offenses, in which force is no longer required as a pre-requisite to adult sexual assault, and thus, the presumption of force in child sexual assaults has become an anachronism.[13] For example, under the ASAA, second-degree sexual abuse (a general sexual assault crime, not the child-specific crime at issue in this case) can

---

[13] Consent remains a defense to general sexual assault crimes, D.C. Code § 22-3007, but the ASAA did not create a lack-of-force defense. *See* D.C. Code § 22-3001 (4) (defining "consent" such that a victim's nonconsensual submission may be obtained by threats or coercion, not just force).

be committed by placing the victim in reasonable fear *without* force.  D.C. Code § 22-3003 (1).  In addition, force is merely one of four circumstances that can elevate nonconsensual intercourse to first-degree sexual abuse, which carries a ten-year-greater maximum penalty.  *See* D.C. Code § 22-3002 (a).  In this way, the ASAA embodies the notion that force is not essential to the commission of sexual assault offenses, a view that is consistent with a national shift in attitudes toward sexual assault.[14]

The omission of any force requirement or lack-of-force defense for sexual abuse offenses was a conscious decision by the Council in drafting the ASAA.[15]

---

[14] More than twenty states punish non-consensual or coerced sexual intercourse between adults without requiring a showing that the perpetrator used force or threatened imminent force (though many of these states, like the District of Columbia, also have a more serious offense available when a perpetrator uses force or threatens imminent force).  *See* Alaska Stat. § 11.41.410 (a)(1); Ariz. Rev. Stat. § 13-1406 (A); Colo. Rev. Stat. § 18-3-402 (1)(a); Del. Code tit. 11, § 772 (a)(1); Fla. Stat. § 794.011 (b) & (e); Idaho Code § 18-6101 (6); Iowa Code § 709.1 (1); Kan. Stat. § 21-5503 (a)(1)(A); Mich. Comp. Laws § 750.520d (1)(b); Mont. Code § 45-5-503 (1); Nev. Rev. Stat. § 200.366 (1)(a); N.H. Rev. Stat. § 632-A:2 (m); 18 Pa. Cons. Stat. § 3124.1; 11 R.I. Gen. Laws § 11-37-2 (2); S.C. Code § 16-3-654 (1)(a); S.D. Codified Laws § 22-22-1 (2); Tenn. Code § 39-13-503 (2); Utah Code § 76-5-402 (1); Vt. Stat. Tit. 13 § 3252 (a)(1); Wash. Rev. Code § 9A.44.060 (1)(a); Wis. Stat. § 940.225 (3); Wyo. Stat. § 6-2-303 (a)(ii); *see also* FBI Criminal Justice Information Services Division, "Reporting Rape in 2013," at 2 (Apr. 9, 2014) (defining rape, without reference to force, as, "Penetration, no matter how slight . . . without the consent of the victim").

[15] The Council received support from multiple parties for its decision to omit a force requirement, *see* Comment of Denise Snyder, D.C. Rape Crisis Center, on Bill 10-87 (Jun. 8, 1994);  Testimony of Diana Savit, Women's Bar

(continued . . .)

Instead, the ASAA provides for an increased potential penalty when force is used against an adult by punishing first-degree sexual abuse with up to thirty years in prison, while punishing second-degree sexual abuse with only up to twenty years in prison. D.C. Code §§ 22-3002, 22-3003.[16] The ASAA also symmetrically authorizes an additional penalty of ten years for the use of force to commit child sexual abuse. Specifically, in addition to the ten-year maximum penalty for second-degree child sexual abuse, the trial court could impose, upon proof that a defendant used force, a consecutive sentence of up to ten years if a defendant is also convicted of third-degree sexual abuse.

Upon this review of the ASAA's plain language and legislative history, we conclude that the ASAA does not retain a presumption of force for sexual contact with children. Thus, the fact that there is a four or more year age gap between the defendant and child victim of sexual assault, does not trigger a presumption that force was used during the sexual contact. Instead, in a criminal prosecution in

---

(. . . continued)
Association of D.C., on Bill 10-87, at 5 (Sep. 22, 1993), and the Council did not amend the structure of the ASAA in response to the suggestion that lack of force and consent were essentially equivalent, *see* Comment of Shirlimarie McAroy-Gray, D.C. Public Defender Service, on Bill 10-97, at 4–5 (Sep. 23, 1993).

[16] The penalty for an ASAA crime may be further enhanced if additional aggravating circumstances are present. *See* D.C. Code § 22-3020 (2012 Repl.).

which both third-degree sexual abuse and second-degree child sexual abuse are charged, the force element of third-degree sexual abuse must be proven independently from the four-year age gap requirement under second-degree child sexual abuse. Accordingly, it is possible to commit second-degree child sexual abuse without committing third-degree sexual abuse, and thus, those offenses do not merge. Importantly, we note that in this case, the trial court made findings that appellant actually used force against R.J. without relying on a presumption of force arising from R.J.'s youth. Thus, because M.S.'s adjudication of delinquency for third-degree sexual abuse rested on independent findings that he used force against R.J. (the unique element for third-degree abuse), those adjudications are affirmed.[17]

### III. Conclusion

---

[17] Our conclusion that misdemeanor sexual abuse and fourth-degree sexual abuse merge into second-degree child sexual abuse does not result in lenient treatment of convicted child abusers. Sexual contact with an adult who could not appraise the nature of the conduct leads to a maximum penalty of just five years, and sexual contact without permission leads to a maximum penalty of just 180 days. D.C. Code §§ 22-3005, 22-3006. Those crimes merge into second-degree child sexual abuse, but a perpetrator of second-degree child sexual abuse faces an even greater maximum penalty of ten years, reflecting the legislative intent to protect children. If the perpetrator uses force to accomplish the sexual contact with a child at least four years younger than the perpetrator, the charge of third-degree sexual abuse, which does not merge, allows an additional ten-year penalty beyond that for second-degree child sexual abuse, commensurate with the increased penalty for using force during an abusive sexual act with an adult.

Contrary to the parties' contentions, the plain language and legislative history of the Anti-Sexual Abuse Act of 1994 do not clearly indicate a policy on merger of the various sexual assault offenses. We hold, based upon our analysis of the ASAA and our prior decisions in *Davis* and *Blockburger*, that every act fulfilling the elements of second-degree child sexual abuse necessarily also fulfills the elements of misdemeanor sexual abuse and fourth-degree sexual abuse. In other words, it is impossible to commit second-degree child sexual abuse without triggering a conclusive presumption that the child victim was incapable of giving permission, as required for misdemeanor sexual abuse. It is also impossible to commit second-degree child sexual abuse without triggering a conclusive presumption that the child victim was incapable of appraising the nature of the conduct, as required for fourth-degree sexual abuse. Thus, the offenses of misdemeanor sexual abuse and fourth-degree sexual abuse merge into second-degree child sexual abuse.

In contrast, we hold that the ASAA does not presume a use of force merely by the fact that a defendant is at least four years older than a child victim of sexual assault, and the government's proof that a defendant used force to accomplish a sexual contact may sustain an independent adjudication of delinquency (or conviction) for third-degree sexual abuse. Thus, appellant's adjudications of

delinquency for third-degree child sexual abuse, having rested on independent findings that appellant actually used force against the child victim, do not merge with his second-degree child sexual abuse adjudications. Accordingly, we affirm in part and remand for merger consistent with this opinion.[18]

*So ordered.*

---

[18] Appellant's briefs discussed Judge Farrell's concurring opinion in *Davis* in order to provide additional support for his merger claims. In his concurrence, Judge Farrell indicated that he had "strong reservations" about whether the Council intended to allow the government to charge general sexual abuse offenses in circumstances in which the victim is a child. Judge Farrell opined that by charging Davis with misdemeanor sexual abuse for engaging in sexual conduct with a child, the government had "reached outside [of the] hierarchy" of child sexual abuse offenses to charge a general sexual abuse offense — which likely was not intended by the Council. *Davis, supra*, 873 A.2d at 1106. In our majority opinion in *Davis*, we decided to leave Judge Farrell's statutory interpretation of the ASAA "for another occasion[,]" because Davis had not argued that he had been improperly charged and in addition, we observed that "[f]acially, the misdemeanor sexual abuse statute [was] applicable to Davis's offense against his daughter[.]" *Id.*

While appellant discussed Judge Farrell's concurring opinion, appellant made clear several times in his briefs and at oral argument that he is not arguing that he was improperly charged in this case. *See, e.g.,* Reply Br. of Appellant at 9, *In re M.S.*, No. 15-FS-313 (May 25, 2016) ("M.S. is not challenging [the government's] charging decisions"); *id.* at 8 ("M.S. does not argue . . . that the District could not charge the general sexual assault offenses given that the complainant in this case was a child."); *see also* Oral Argument, at 10:21, *In re M.S.*, No. 15-FS-313 (June 1, 2016) (statement from defense counsel that "[w]e're not saying that the crimes can't be charged, we're just saying that they have to merge"). Accordingly, because appellant is not challenging the government's decision to charge him with general sexual abuse offenses in this case, we again leave for another occasion the issue of whether the government may charge general sexual abuse in circumstances in which child sexual abuse offenses are applicable.

**Appendix A:  Table of Elements of the ASAA Crimes at Issue**

| Crime | Elements | Statutory Source |
|---|---|---|
| Second-Degree Child Sexual Abuse | Sexual Contact with a Child | § 22-3009 |
| | *Defendant is at least 4 Years Older Than the Child* | § 22-3009 |
| | Intent to Abuse, Humiliate, Harass, Degrade, or Arouse or Gratify Sexual Desire | § 22-3001 (9) |
| | | |
| Third-Degree Sexual Abuse | Sexual Contact with Another Person | § 22-3004 |
| | *By Using Force Against that Person* | § 22-3004 (1) |
| | Intent to Abuse, Humiliate, Harass, Degrade, or Arouse or Gratify Sexual Desire | § 22-3001 (9) |
| | | |
| Fourth-Degree Sexual Abuse | Sexual Contact with Another Person | § 22-3005 |
| | *Knows or Has Reason to Know that the Other Person Is Incapable of Appraising the Nature of the Conduct* | § 22-3005 (2)(A) |
| | Intent to Abuse, Humiliate, Harass, Degrade, or Arouse or Gratify Sexual Desire | § 22-3001 (9) |
| | | |
| Misdemeanor Sexual Abuse | Sexual Contact with Another Person | § 22-3006 |
| | *With Knowledge or Reason to Know that Act is Without the Person's Permission* | § 22-3006 |
| | Intent to Abuse, Humiliate, Harass, Degrade, or Arouse or Gratify Sexual Desire | § 22-3001 (9) |