Ernesto GUARRO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12844.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 24, 1956.

Decided Sept. 27, 1956.

Mr. Claire O. Ducker, Sr., Washington, D. C., for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., at the time brief was filed, Lewis Carroll and Alfred Burka, Asst. U. S. Attys., were on the brief, for appellee.

Mr. Herbert D. Horowitz, Washington, D. C. (appointed by this Court), filed a brief as amicus curiae, urging reversal.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant was convicted in the Municipal Court of assault, under D.C.Code 1951, § 22–504.[1] The Municipal Court of Appeals affirmed. 1955, 116 A.2d 408, 409. We later allowed this appeal.

The assault alleged was a deliberate touching of the private parts of a police officer, not in uniform, who is a member of the morals division. He was on duty in a motion picture theatre. The episode is thus summarized by the Municipal Court of Appeals:

"The complaining witness testified that he first observed the defendant in the men's room of the theater, saw him leave, and a few minutes later noticed him standing in the mezzanine balcony. Complainant then proceeded to return from the balcony to the orchestra floor by way of a rear stairway and, in doing so,

paused for a few minutes to lean against the wall. He was approached by defendant and was asked why he was not looking at the picture. The officer replied that it was too noisy, whereupon defendant '* * * reached his hand over and placed it on my privates.' The officer asked the defendant if he wanted to engage in an act of perversion, and upon receiving an answer in the affirmative, identified himself and placed him under arrest."

The situation thus involves some of the elements that were present in Kelly v. United States, 1952, 90 U.S.App.D.C. 125, 194 F.2d 150.

Appellant's chief contentions are that the general assault statute has no application to a non-violent sexual touching of the present sort, and that the use of that statute would permit flagrant violation of the rule of the Kelly case, where we required high standards of proof in cases charging invitation to sodomy.

As to the first contention, our views will shortly be stated: it is enough at this point to say that we find no essential infirmity in the application of the assault statute to incidents of this general sort. As to the second contention this much is clear: whether (as here) the information is brought under the general assault statute, D.C.Code, 1951, § 22–504, or under the statutes dealing specifically with sexual crimes, D.C.Code, §§ 22–1112, 22–2701, Supp. IV, 1955, we think the standards set forth in the Kelly case should be applied to cases of the present sort. Our decision in Kelly did not purport to be based on any express or implied requirements of Section 22–2701, and indeed did not deal with all the crimes comprehended within that section. It was based rather on the peculiar nature of a charge involving homosexual conduct, and the difficulties that face a person accused of such conduct. 90 U.S.App.D.C. at pages 128–129, 194 F.2d at pages 153–154. In Kelly the

---

1. That section provides:

"Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than five hundred dollars or be imprisoned not more than twelve months, or both."

crime alleged was an invitation to sodomy, and we said:

"In the first place, the testimony of a single witness to a verbal invitation to sodomy should be received and considered with great caution. The great public interest that charges of this offense be not preferred without sound foundation requires that there be a known strictness on the part of the courts which will serve to deter prosecutors in dubious cases."

The same caution should be applied in considering the testimony of the arresting police officer in cases like the present, relative to an act which by its nature left no traces and to which there were no other witnesses.

■■ We turn to the question whether the evidence in this case, when tested by the rules laid down in Kelly, is sufficient to support a conviction obtained under the general assault statute. At the outset it should be noted that the information is not brought under one of the misdemeanor statutes—carrying much lighter maximum penalties—dealing specifically with sexual offenses of the general sort here alleged.[2] It is of course true that a single act may violate more than one criminal statute "At least where different proof is required for each offense". United States v. Beacon Brass Co., 1952, 344 U.S. 43, 45, 73 S.Ct. 77, 79, 97 L.Ed. 61. But before we can countenance the use of an assault statute to cover conduct that appears to fall within the bounds of misdemeanor statutes, some designed, it would seem, specifically to deal with facts of the sort alleged here, we must be certain that the

elements of an assault have been established.

■ The assault contemplated by Section 22–504 is a common law assault. Beausoliel v. United States, 1939, 71 App. D.C. 111, 114, 107 F.2d 292, 295. Assault at common law is "an attempt with force or violence to do a corporal injury to another; and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." Patterson v. Pillans, 1915, 43 App.D.C. 505, 506–507.[3] What we are dealing with here is not an assault in the accepted meaning of the term. The defendant is not alleged to have physically injured the policeman, nor even to have thought of doing so. Nevertheless we recognized in Beausoliel that non-violent actions involving sexual misconduct may constitute assaults. In such a case, "threat or danger of physical suffering or injury in the ordinary sense is not necessary. The injury suffered by the innocent victim may be the fear, shame, humiliation, and mental anguish caused by the assault." Beausoliel v. United States, supra, 71 App.D.C. at pages 115–116, 107 F.2d at pages 296–297.

■■ In the instant case appellant seeks to negative the assault by pointing out that the policeman specifically denied being "hurt," "embarrassed," or "humiliated." But we do not understand Beausoliel to require specific proof of emotional injury, whether the victim be a child or an adult. Unless there is consent, it would seem that a sexual touching is a sufficiently offensive act to constitute an

2. D.C.Code, § 22–1112, Supp. IV, 1955 provides a fine of up to $300 and imprisonment of up to 90 days or both for persons who "make any lewd, obscene, or indecent sexual proposal, or * * * commit any other lewd, obscene, or indecent act in the District of Columbia". Prior to the 1953 amendments to the Code, 67 Stat. 92 (1953), Section 22–1112 encompassed only obscene or indecent exposure. Section 22–2701 provides a fine of up to

$250 and imprisonment of up to 90 days or both for inviting or persuading a person over sixteen "for the purpose of prostitution, or any other immoral or lewd purpose". In addition, the 1953 amendments added a disorderly conduct statute, D.C.Code, Section 22–1121, Supp. IV, 1955, carrying the same penalties as Section 22–2701.

3. See also 1 Wharton, Criminal Law § 799 (12th ed. 1932).

assault. Nor should the fact that an experienced policeman denies emotional injury alter the situation. The reluctance of these officers to admit embarrassment when, in the line of duty, they are involved in an incident like the one alleged here should not make them a special class whom perverts may assault with impunity.

■ Nevertheless the evidence in the instant case cannot support a conviction for assault unless it appears that there was no actual or apparent consent. Generally where there is consent, there is no assault. 1 Wharton, Criminal Law §§ 180, 751 (12th ed. 1932).[4] If the defendant in an assault prosecution "believes on grounds regarded as adequate that he is dealing with a consenting person, he will be treated as if this were so by the operation of a rule in no way specially devised for this situation, but extending all through the field of criminal law and applicable generally in case of mistake of fact." Putkammer, Consent in Criminal Assault, 19 Ill.L.Rev. 617, 628, n. 40 (1925).

In some situations consent is irrelevant. Thus when sexual assaults are committed upon children or idiots or patients of a fraudulent doctor, consent is not a defense.[5] The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their "consent" is of no significance. But such is not the case here. The "victim" in this case is a police officer charged with the duty of arresting, among others, persons committing crimes involving sexual deviation. Therefore, while conduct of children and idiots just prior to an assault has no bearing on the criminal responsibility of the assailant, the conduct of this policeman is of crucial significance, for he not only is aware of what is happening, but, furthermore, he may think that it is part of his job to see to it that such things as are alleged here do happen to him.[6] The Municipal Court of Appeals in McDermett v. United States, D.C.Mun.App.1953, 98 A.2d 287, 290, discussed the problem of homosexual assaults on police officers in these terms:

"Courts are not so uninformed as not to be aware that there are such things as flirtations between man and man. And when flirtation is encouraged and mutual, and leads to a not unexpected intimacy or an intimacy not discouraged or repelled, such cannot be classified as an assault. Even more strongly should the rule apply when the complaining witness is a policeman. An officer of the law, as we have said, has the duty of preventing, not encouraging crime. As appellant's counsel says in his brief, an officer should not be permitted to 'torment and tease weak men beyond their power to resist' and then attempt to make out a case of assault."

■ The policeman's conduct in the instant case is for the most part not disputed. From the testimony of the policeman and the accused it appears that the two men first noticed each other in the men's room of a local theatre. The defendant then walked to the mezzanine balcony, and shortly thereafter the policeman appeared near him.[7] When asked "You had your eye on him?" the policeman replied, "When I saw him standing up in the back there, I noticed him, yes." Then the policeman left the balcony,

---

**4.** "* * * in criminal law, an act does not constitute an assault, or an assault and battery, if the person on or against whom it is committed freely consents to the act, provided he or she is capable of consenting, and the act is one to which consent may be given, and the consent is not obtained by fraud." Clark & Marshall, Crimes, § 212 (5th ed. 1952).

**5.** See 1 Wharton, Criminal Law § 751 (12th ed. 1932), and cases there cited.

**6.** See Henderson v. United States, D.C. Mun.App.1955, 117 A.2d 456; McDermett v. United States, D.C.Mun.App. 1953, 98 A.2d 287; Dyson v. United States, D.C.Mun.App.1953, 97 A.2d 135.

**7.** The defendant testified that he thought the policeman had followed him.

walked down a back stairway, stopped on the stairs and waited for "three or four minutes." As the defendant descended the stairs,[8] the policeman was standing on the stairs, leaning against the wall, apparently with his coat unbuttoned.[9] Immediately after the alleged touching, according to the officer's own testimony, he asked the defendant "if he wanted to take it."

"To sustain [this conviction] we should have to find, at least, that the evidence is more consistent with guilt than with innocence." Williams v. United States, 1944, 78 U.S.App.D.C. 322, 323, 140 F.2d 351, 352. If the policeman did no more than permit the alleged touching, there would be no real or apparent consent. But more happened here than that. Considering the totality of the policeman's conduct, including his inviting inquiry to the defendant, we cannot say that the evidence is more consistent with an assault than with an act induced in part by apparent consent. In a case like the present, to let the suspect think there is consent in order to encourage an act which furnishes an excuse for an arrest will defeat a prosecution for assault.

 There are many situations wherein use of police decoys is permissible, and perhaps a practical necessity. Drug peddlers are hard to catch if the undercover policeman may not make a purchase. And, of course, he may make a purchase, and it may lead to a conviction. The difference, however, between that case and this is that selling drugs is a crime against society no matter how willing the customer may be to purchase, whereas a homosexual touching of an apparently willing and competent person is not an "assault," whatever else it may be in the catalogue of criminal offenses.[10]

Reversed.

8. When asked whether he had any idea that the defendant would follow him down the stairs, the policeman replied, "Well, I did not know whether he would or not."

9. The officer first testified that his coat may have been open, but he was not sure; then said it must have been open; and, finally, that it was open.

