Preston JENKINS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 82–976, 83–1236 and 84–928.

District of Columbia Court of Appeals.

Argued Dec. 3, 1985.

Decided March 27, 1986.

Richard S. Stolker, Rockville, Md., appointed by the court, for appellant.

Wendy Bebie, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before MACK, NEWMAN and FERREN, Associate Judges.

MACK, Associate Judge:

Appellant Preston Jenkins was convicted of kidnapping,[1] rape,[2] assault with intent to commit sodomy,[3] robbery,[4] and violation of the Bail Reform Act.[5] He received three concurrent sentences, the largest of which totals fifteen years to life imprisonment, followed by two consecutive sentences of five to fifteen years and one to three years respectively. On appeal he urges a number of grounds upon which his convictions should be overturned. We perceive no reversible error and thus affirm.

**I**

At about 8:15 p.m. on October 31, 1980, the seventeen year old complainant, L.W., set out to attend her high school homecoming dance. She was approached by appellant while standing at a bus stop in Northwest Washington. Appellant initiated a conversation during which he offered complainant $25 and a ride if she would smoke "herb" with him. Complainant, who did not know appellant, refused. Her bus arrived a couple of minutes later, but appellant took hold of her arm and prevented her from boarding.

Appellant repeated his invitation. When complainant again refused he pulled a twelve inch long brown paper package out of his pocket and warned her that she "was going to be laying in the street with blood coming out of [her]." Complainant did not know the contents of the package and was frightened. The street was deserted.

Appellant, still holding complainant by the arm, led the young woman to a nearby building. When they reached the building, appellant called out for someone else. They were joined by a younger man who was later identified as appellant's son. In response to their query, complainant told the men that her name was Deborah. She did not want them to know her real name.

Complainant testified that she was taken by appellant to the basement of the adjoining building[6] and into a small windowless room which contained a couch and an empty can. She attempted to run from the room but appellant pulled her back. He tried to undress her, despite her resistance, and twice struck her in the eye when she told him she wanted to leave. These events were briefly interrupted when appellant's son, who had remained upstairs, reappeared in the doorway of the room and held a short conversation with his father.

After the younger man had returned upstairs, appellant told complainant that they were going to engage in oral sodomy. He succeeded in lifting her skirt and bending towards her genital area before she pushed him away. Appellant's son, upon hearing the noise, again arrived in the basement to find complainant crying and asking not to be left alone with appellant because he was trying to rape her. She appeared to the son to be holding her coat closed in front of her body. Following some argument with his father, appellant's son left the scene, having been told to mind his own business.

1. D.C.Code § 22–2101 (1981).

2. D.C.Code § 22–2801 (1981).

3. D.C.Code §§ 22–503, –3502 (1981).

4. D.C.Code § 22–2901 (1981).

5. D.C.Code § 23–1327(a) (1981).

6. Appellant's son testified that his grandmother lived in this building. He lived with his mother, appellant's estranged wife, in the house next door. Appellant lived elsewhere.

After his son's departure, appellant pulled down complainant's pantyhose, pushed her onto the couch and inserted his penis into her vagina. When he had finished, appellant wiped himself off with a handkerchief, threw it behind the can, and fixed his clothes. Appellant then took $11 from complainant and left. Complainant went straight home. Her mother found her crying at the door of their apartment. Complainant's hair was dishevelled, her eye swollen and her newly-bought pantyhose torn. She told her mother that she had been raped.

The police were notified without delay. That evening complainant returned to the scene with a police officer. She identified appellant's son and he admitted seeing her earlier that evening. Evidence of sperm cells was found on her pantyhose and on the stained handkerchief which was retrieved from behind the empty can. A gynecological examination later that night revealed the presence of a "few intact sperm" inside complainant's vagina. Within days she identified appellant from a photographic display and subsequently repeated her positive identification at a lineup and in court.

At trial, defense counsel cross-examined the government witnesses, who included complainant, her mother, appellant's son,[7] the police officer who accompanied complainant to the crime scene that evening, the expert gynecologist who conducted the examination and various others. The defense questioning and closing argument suggested that complainant had consented to have sexual intercourse with appellant in return for the proffered $25 and a ride. Appellant called one witness, a staff investigator for the public defender service, who had taken a signed statement from complainant three months after the incident. This document contained the assertion that: "During the act, [appellant] did not try to have oral sex with me."

## II

We address only appellant's contention that the trial court erred in its refusal to instruct the jury that consent is a defense to the crime of assault with intent to commit sodomy. His remaining arguments are all without substance. These include the claims that his convictions for rape (D.C. Code § 22–2801 (1981)) and assault with intent to commit sodomy (D.C.Code §§ 22–503, –3502 (1981)) were based on statutory provisions which had been effectively repealed;[8] that the trial court erroneously admitted the complainant's prior consistent statements;[9] and that the trial court was obliged to conduct an evidentiary hearing before denying his § 23–110 motions for vacation of sentence on grounds of ineffective assistance of counsel and prosecutorial misconduct.[10]

---

**7.** The testimony of appellant's son substantially confirmed complainant's account of the incident.

**8.** Appellant's argument is foreclosed by our recent decision in *Gary v. United States*, 499 A.2d 815 (D.C.1985) (en banc).

**9.** Prior consistent statements are properly admitted to rebut charges of recent fabrication. *Warren v. United States*, 436 A.2d 821, 836–37 (D.C.1981). Even if error had been shown, it would be harmless on the record before us. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

**10.** Appellant's allegation of prosecutorial misconduct relates to a peripheral issue and could

not have affected the outcome of the trial. Similarly, although appellant argues that his attorney's performance fell below "prevailing professional norms" he cannot, in light of the overwhelming evidence against him, persuade us that he was deprived of a trial "whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 690, 104 S.Ct. 2052, 2064, 2065, 80 L.Ed.2d 674 (1984). The trial court was entitled to dispense with an evidentiary hearing on the D.C.Code § 23–110 (1981) motions because "the motion[s] and files and records of the case conclusively show[ed] that the prisoner [was] entitled to no relief." *See White v. United States*, 484 A.2d 553, 559 (1984); *McClurkin v. United States*, 472 A.2d 1348, 1353 (D.C.), *cert. denied*, —— U.S. ——, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984).

In order to prove assault with intent to commit sodomy,[11] the government has the burden of showing (1) an assault, coupled with (2) the specific intent to commit sodomy. The government must establish that all the elements of an assault are present and also that the accused intended all the elements of sodomy. On the other hand, a defendant is entitled to raise any defense which would negate an essential element of either offense.

The trial court denied appellant's request that the jury be instructed that consent is a defense to the charge of assault with intent to commit sodomy. This ruling apparently rested on the view that under no circumstances is consent a defense to the crime of sodomy—a theory which the government advances in this court.[12] We are not persuaded as to the validity of this rationale in the present case, even if we assume it to be otherwise correct, since it takes no account of the consent defense that may be available to one accused of a sexual assault.

It is a settled principle that one is not guilty of a sexual assault if the other has consented to the touching of his or her person, or if there exist reasonable grounds to believe that such consent has in fact been given.[13] *McDermett v. United States*, 98 A.2d 287, 289 (D.C.1953); *Guarro v. United States*, 99 U.S.App.D.C. 97, 100, 237 F.2d 578, 581 (1956). The only exceptions to this rule are designed to protect those, such as minors, who do not have the capacity to consent to intimate sexual touching. *Hall v. United States*, 400 A.2d

1063, 1066 (D.C.1979); D.C.Code § 22–3501(c) (1981); *see Brake v. United States*, 494 A.2d 646, 650 n. 2 (D.C.1985). If, therefore, complainant consented to appellant's conduct there was no assault and, if there was no assault, then there would have been no assault with intent to commit sodomy. Having failed to prove one of the two essential components of the offense, the government would have been unable to convict.

■ Appellant was entitled to the requested instruction if there was any evidence, however weak, tending to support his theory of the case. *Powell v. United States*, 414 A.2d 530, 532–33 (D.C.1980) (per curiam). The defense relied entirely on the consent theory. Complainant testified that appellant offered her $25 and a ride if she would smoke "herb" with him, but she refused. The cross-examination sought almost exclusively to have complainant admit that she had accepted appellant's proposition and that the subsequent sexual intercourse also took place with her consent. The trial court properly found this evidence sufficient to instruct the jury, at appellant's request, that consent is a defense to a charge of kidnapping.[14] It was therefore error for the court to deny the instruction that consent is also a defense to a charge of assault with intent to commit sodomy. "[T]he burden [is] on the government to prove not only the touching but that it was unlawful...." *Davenport v. United States*, 60 A.2d 226 (D.C.1948).

11. D.C.Code § 22–503 (1981) provides:
 Whoever assaults another with intent to commit any other offense which may be punished by imprisonment in the penitentiary shall be imprisoned not more than 5 years.
 Sodomy, defined by *id.* § 22–3502, is an offense punishable by the contemplated sentence of imprisonment.

12. We are not required to, nor do we, consider the accuracy of this statement outside of its inapplicability in the present context. *But see McGuinn v. United States*, 89 U.S.App.D.C. 197, 198–99, 191 F.2d 477, 478–79 (1951).

13. If the consent rule did not exist, all acts of physical affection between adults would be outlawed and either the human race become an endangered species or the law an object of ridicule.

14. No such additional instruction was given on the rape charge, because lack of consent is covered in the standard instruction. *Compare* Criminal Jury Instructions for the District of Columbia, No. 4.74 (3rd ed. 1978) (rape) *with id.*, No. 4.90 (kidnapping).

 In the circumstances of the present case, however, there was no prejudice sufficient to warrant a reversal. We can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States, supra* note 9, 328 U.S. 750 at 765, 66 S.Ct. 1239 at 1248, 90 L.Ed. 1557. There is neither direct nor persuasive evidence in this record to suggest that complainant consented to appellant's behavior. Moreover, it strains credulity to argue that the jury could have found consent to the intended oral sodomy, while simultaneously rejecting findings of consent to kidnapping and rape, offenses which took place both before and after the intervening sexual assault. The error was harmless and no reversal is required. *McPhaul v. United States*, 452 A.2d 371, 374 (D.C.1982); *Arnold v. United States*, 358 A.2d 335, 341–42 (D.C.1976) (en banc).

*Affirmed.*