*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CF-906

JIMMY R. AUGUSTIN, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-19807-16)

(Hon. Patricia Broderick, Trial Judge)

(Argued October 2, 2019                      Decided October 29, 2020)

*Anna B. Scanlon* for appellant.

*Ann M. Carroll*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time the case was argued, and *Elizabeth Trosman*, *John P. Mannarino*, and *Jennifer Loeb*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN and THOMPSON, *Associate Judges*.

GLICKMAN, *Associate Judge*:  Mr. Augustin appeals his convictions for misdemeanor sexual abuse of a minor (MSA-M)[1] and simple assault.[2]  His claims of error raise questions of statutory interpretation and sufficiency of the evidence. We vacate appellant's conviction of MSA-M and remand for the trial judge to make new findings and render a new verdict on that count. We reverse appellant's conviction for simple assault.

## I.

Appellant was convicted after a bench trial in the Superior Court.  He did not testify or call any witnesses in his defense.  Except as indicated below, the material facts are undisputed and may be summarized as follows.

In the fall of 2016, when appellant was a thirty-three-year-old athletic trainer and teacher at a Washington, D.C., parochial high school, he became infatuated with A.G., one of the student athletes he had taught and advised.  She was then in her senior year, just a few months shy of her eighteenth birthday, and she had what she called a "crush" on appellant.  In mid-September, appellant began asking A.G.

---

[1]  D.C. Code § 22-3010.01 (2012 Repl. & 2020 Supp.).

[2]  D.C. Code § 22-404 (2012 Repl. & 2020 Supp.).

to visit him in his school office. She did so, almost daily. During several of these visits, appellant hugged her closely and affectionately. The MSA-M charges were based on these embraces. During a few visits appellant kissed A.G., including once on the lips. The simple assault charge was for the kissing.

A.G. testified at trial that during the approximately month-long period in September and October when they were meeting in appellant's office, he hugged her a total of approximately eight or ten times, and he kissed her about five times in all. Usually they were alone in the office, but sometimes others were present, including a student who worked there with appellant and observed some of the hugs.

Appellant's hugs initially were brief and casual in nature, but over time, A.G. said, they became "slightly longer," up to four to five seconds in duration. A.G. characterized three or four of appellant's embraces as "intense," and "intimate," and like "the kind of hugs [one] would exchange with [one's] boyfriend." Appellant held her tightly and firmly in these hugs, with his hands around her shoulders and sometimes, "momentarily," on the small of her back above her waistline. They both remained fully clothed. Their upper bodies, stomachs, hips, and lower areas were all in contact. Appellant did not rub or move

his body against A.G.'s.  He did not caress or fondle her, nor did he ever put his hands on her breasts or anywhere below her waist.  During one hug, appellant kissed A.G. on the cheek.  They both remained fully clothed.  A.G. did not testify that appellant had an erection or otherwise appeared to become sexually aroused.  Appellant may have told A.G. she looked pretty or complimented her on her appearance, but she did not testify that he spoke to her in any more sexually heated or provocative way during these hugs.

A.G. testified that she and appellant scheduled times when they could meet up to kiss.  In early October, appellant kissed A.G. once on the lips while they were sitting in his office.  As A.G. described it, "[h]e leaned in and then [she] leaned in," he kissed her, and she kissed him back.  It lasted less than two seconds.  A.G. felt "shocked, a little nervous, [and] a little excited" by the kiss.  She did not object to it.  On another occasion, A.G. recalled, appellant kissed her on her neck about an inch or two below her ear.  A.G. denied that this happened during any of appellant's hugs, and she did not recount at trial the circumstances in which it occurred.

A.G. acknowledged at trial that she had a "crush" on appellant and had told him so.  She said he responded that he felt the same way about her.  He also told

A.G. he loved her, did not expect his marriage to last, and wanted to be in a long-term relationship with A.G. after her graduation. They looked forward to her upcoming eighteenth birthday when she would be "legally old enough."

Appellant and A.G. exchanged text messages during their relationship that were flirtatious and that became more sexually explicit. In one message, appellant told A.G. it was "about time I picked you up[,] put you up against the wall[,] [g]ot right up against you[,] felt you breathing and looked you right in your eyes." A.G. responded "Yes yes yes" and the exchange of text messages continued in a provocative vein. In another communication, A.G. told appellant that she wanted to have sex with him, and he responded, "it's on!" In other messages, appellant told A.G. he "crave[d]" her and that he was going to "sex [her] like it's [his] last meal." Appellant sent A.G. a photograph of himself with his shirt off, and A.G. sent appellant a photograph in which her midriff was exposed.

Appellant's liaison with A.G. came to an abrupt end after only a few weeks. A.G. incautiously had shared screen shots of some of appellant's text messages in a group chat with her high school friends. On October 23, one of those friends, who had worked at school with appellant, inadvertently sent the screen shots to appellant's phone. Appellant called her early the next morning and denied having

a relationship with A.G. because, as he told her, "she wasn't of age." Later that day, appellant's wife contacted the sender of the screen shot and another of A.G.'s friends to find out what was going on. One of them, accompanied by the student who worked in appellant's office and had observed some of the hugging there, then reported the matter to the school administration. Appellant was placed on leave and the police were called in.

Appellant was charged by information with MSA-M and simple assault.[3] The trial judge convicted him of one count of MSA-M based on his "intimate and intense" hugging of A.G., and of the simple assault count based on his kissing of A.G.[4] The judge explained her guilty verdict on these two counts as follows:

> From the facts that I've heard in this case I do find that the defendant was older, that he was in a legally defined significant relationship. And that the complainant was 17 years of age. I find that between the dates of September and October of 2016, the defendant hugged the . . . minor[,] A.G., in an intimate and intense way. He held

---

[3] The information also charged appellant with a violation of D.C. Code § 22-3006 (2012 Repl. & 2020 Supp.) (misdemeanor sexual abuse, a different offense from MSA-M). He allegedly had committed this offense by bringing his genitalia into contact with A.G.'s body. The trial judge acquitted appellant of this charge.

[4] The trial judge acquitted appellant of a second count of MSA-M that was premised on his allegedly having touched A.G. close to her buttocks.

her very close so that there was a touching of the breast and genitalia area. Mainly breast area, however. And he did that while also kissing her on the neck and did it for sexual gratification and possibly arousal. So, I find him guilty of count one[,] [misdemeanor sexual abuse of a minor].

. . . .

[C]ount four refers to the assault. And that refers to the kiss. I find the kiss by a person of significant relationship, teacher, with power over the person in a closed office with no one else there during school time to be an assault in the same manner. So, I find him guilty. She has no consent. I find—and he knew she had no consent. I find him guilty of count four.

## II.

### A.

In the Anti-Sexual Abuse Act of 1994 (the ASAA), which is codified in Chapter 30 of Title 22 of the D.C. Code, the Council "revamped the sex offense laws of the District of Columbia."[5] The ASAA groups sex offenses into four categories. The first category consists of several offenses involving the commission of a "sexual act" or "sexual contact" (as defined) against the victim's will or without the victim's consent (typically by means of force or threats, or by

---

[5] *Davis v. United States*, 873 A.2d 1101, 1103 (D.C. 2005).

taking advantage of the victim's incapacitation or impairment).[6] "[T]he offenses in the other ASAA categories address particular situations and relationships in which the victims are deemed incapable of giving meaningful consent, and for which coercion accordingly is presumed."[7] One of these categories, as originally enacted, described sexual offenses against child victims, a "child" being defined as "a person who has not yet attained the age of 16 years."[8] This category of child victim offenses is now codified in D.C. Code §§ 22-3008–3012.[9]

In 2007, the Council amended the ASAA. In doing so, it expanded the child victim category by adding new offenses prohibiting the sexual abuse of "minors" by persons in a "significant relationship" with them.[10] The amendments defined a

---

[6] D.C. Code §§ 22-3002 to -3007 (2012 Repl. & 2020 Supp.).

[7] *Davis*, 873 A.2d at 1104; *see also* D.C. Code §§ 22-3011, -3017 (2012 Repl. & 2020 Supp.) (providing that consent is not a defense to these victim-specific offenses).

[8] *Id.* § 22-3001(3) (2012 Repl. & 2020 Supp.).

[9] The third and fourth categories of ASAA offenses describe crimes against vulnerable wards, patients, clients, and prisoners by persons in a relationship of authority, responsibility, or trust with them. *See id.* §§ 22-3013–3017 (2012 Repl. & 2020 Supp.).

[10] *See id.* §§ 22-3009.01 (first-degree sexual abuse of a minor), -3009.02 (second-degree sexual abuse of a minor), -3010 (enticing a child or minor), and -3010.01 (misdemeanor sexual abuse of a child or minor) (2012 Repl. & 2020 Supp.).

"minor" to mean "a person who has not yet attained the age of 18 years,"[11] and a "significant relationship" to encompass a minor's relationship with any "person in a position of trust with or authority over" the minor, specifically including school teachers, coaches, and other school employees.[12]

One of these new minor-victim offenses, to which consent is not a defense, is MSA-M. As set forth in D.C. Code § 22-3010.01, this offense makes it a misdemeanor for anyone 18 years of age or older and in a significant relationship with a minor to engage in "sexually suggestive conduct" with that minor.[13] "For the purposes of this section," subsection (b) of the statute explains,

> the term "sexually suggestive conduct" means engaging in any of the following acts in a way which is intended to cause or reasonably causes the sexual arousal or sexual gratification of any person:
>
> (1) Touching a child or minor inside his or her clothing;
>
> (2) Touching a child or minor inside or outside his or her clothing close to the genitalia, anus, breast, or buttocks;

---

[11] *Id.* § 22-3001(5A) (2012 Repl. & 2020 Supp.).

[12] *Id.* § 22-3001(10) (2012 Repl. & 2020 Supp.).

[13] *Id.* § 22-3010.01(a) (2012 Repl. & 2020 Supp.). The same section also prohibits persons in significant relationships with children from engaging in sexually suggestive conduct with them.

(3) Placing one's tongue in the mouth of the child or minor; or

(4) Touching one's own genitalia or that of a third person.[14]

Appellant's challenge to the sufficiency of the evidence to convict him of MSA-M for hugging A.G. focuses on both the *actus reus* and the *mens rea* components of "sexually suggestive conduct." He argues that the government's proof was insufficient to establish either (1) that he engaged in an act of "touching" A.G.'s breast or other specified private parts within the meaning of § 22-3010.01(b)(2) when he merely hugged her,[15] or (2) that when he hugged her, he did so for the purpose of sexual gratification.[16] Appellant further argues that his MSA-M conviction cannot stand because the judge misapprehended the testimony and erroneously based her determination that he hugged A.G. for sexual gratification

---

[14] *Id.* § 22-3010.01(b) (2012 Repl. & 2020 Supp.). This section is the only one in the ASAA in which "sexually suggestive conduct" is made an offense.

[15] There is no allegation or evidence that appellant touched A.G. inside her clothing, placed his tongue in her mouth, or touched his own genitalia or that of a third person in her presence, the conduct specified in subsections (b)(1), (3), and (4). A.G. specifically denied that appellant put his tongue in her mouth when he kissed her. And kissing a minor on the lips, neck, or cheek is not proscribed by § 22-3010.01, regardless of the actor's intent or relationship to the minor.

[16] The trial judge found that appellant hugged A.G. "for sexual gratification" and only "possibly" for sexual arousal. A finding of only "possibly" is not a finding beyond a reasonable doubt.

on a factual finding not supported by the evidence, to wit, that he was "kissing her on the neck" *while* he was hugging A.G.

The first, *actus reus*, question turns on a threshold issue of statutory interpretation that we review *de novo*.[17] Appellant contends that, by using the word "touching" in § 22-3010.01(b), the legislature must have meant to require more than merely incidental physical contact between any part of the defendant's body with the area of a child's or minor's "genitalia, anus, breast, or buttocks." Rather, he argues, "touching" requires an act of *feeling* one of those areas *with one's tactile senses*—i.e., generally speaking, with one's fingers, hands, genitals, or other sensory organs. Appellant further argues that mere hugs, such as those he gave A.G., do not involve such "touching," and that the Council could not have meant to criminalize them—for in everyday life, people commonly and innocently embrace to show affection, and also to console, to congratulate, and simply to greet or bid farewell. Appellant argues that the incidental physical contact of parts of their bodies in such embraces is not an act of sensory perception or exploration. The hugger's chest may be pressed against the recipient's breasts, for example, but as one court has put it, "the chest is not a part of the body generally used to reach

---

[17] *Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011).

out for purposes of 'feeling.'"[18]  Thus, appellant argues, evidence of hugging alone is not enough to prove the *actus reus* of MSA-M set forth in § 22-3010.01(b); there must be some additional conduct falling within the specifications of that subsection to support a conviction.

We agree that § 22-3010.01 does not sweepingly criminalize all hugging of a minor by someone in a significant relationship with that minor, but not because we accept appellant's somewhat restrictive construction of the word "touching" in the statute.

The ASAA does not define the term "touching."  "When the terms of a statute are undefined and not recognized terms of art, we presumptively accord them their ordinary meaning in common usage, taking into account the context in which they are employed."[19]  The dictionary is a "useful starting point."[20]  But "individual words of a statute are to be read in the light of the statute taken as a whole, and where possible, courts should avoid constructions at variance with the

---

[18] *State v. Ohrtman*, 466 N.W. 2d 1, 4 (Minn. Ct. App. 1991).

[19] *Hood*, 28 A.3d at 559 (citing *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)).

[20] *Fleming v. United States*, 224 A.3d 213, 220 (D.C. 2020) (en banc) (citation omitted).

policy of the legislation as a whole."[21]  Hence "[w]e consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation."[22]

The primary dictionary definition of the word "touch," when it is employed as a transitive verb (as it is in § 22-3010.01(b)), is consistent with appellant's argument.  The first definition of the word in Webster's, for example, is "to bring a bodily part briefly into contact with so as to feel" and "to perceive or experience through the tactile sense."[23]  But that is not the only definition given for the transitive verb "touch"; the dictionary confirms that the word also is commonly used without implications of feeling, perception, or the tactile sense or experience. Other definitions in Webster's include, for example, "to strike or push lightly"; to "extend the hand or foot or an implement so as to reach, nudge, stir up, inspect,

---

[21] *A.R. v. F.C.*, 33 A.3d 403, 405 (D.C. 2011) (quoting *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 171 (D.C. 2008)).

[22] *Roberts v. United States*, 216 A.3d 870, 876 (D.C. 2019).

[23] *Touch*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002).

arouse"; "to lay hands upon"; and "to put hands upon in any way or degree."[24] There is clearly a broad range of transitive verb usage of the word "touch."

For three reasons, we are not persuaded that the Council meant to use the word "touching" only in its more restrictive (even if primary) sense of feeling or tactile sensing.

First, the "sexually suggestive conduct" prohibited in § 22-3010.01(b) plainly is not limited to "touching" that sexually arouses or gratifies the actor doing the touching; it extends to touching that causes the child or minor (or any other person, for that matter) to be sexually aroused or gratified. This is an indication that the actor's own tactile sensation is not necessarily required.

---

[24] *Id.* While dictionaries may sometimes disagree or "cut in [different] directions," *Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066, 1075 (D.C. 2020), we do not find that to be true here. The COLLINS ONLINE DICTIONARY, for example, includes the following definitions for the transitive verb "touch" in American English: "1. to put the hand, the finger, or some other part of the body on, so as to feel; perceive by the sense of feeling[;] 2. to bring into contact with something else[;] . . . 4. to be or come into contact with[;] . . . 6. to strike lightly[;] . . . 10. to lay hands on; handle; use[;] 11. to handle roughly or molest." (*Touch*, COLLINS ONLINE DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/touch https://perma.cc/57TY-MJCL).

Second, that indication is reinforced by the fact that the ASAA also employs the transitive verb "touching" when it defines "sexual contact" as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."[25] Here, too, the prohibited conduct includes touching that does not necessarily involve the tactile sense; indeed, because the touching may be with "any object," the actor does not have to feel or sense the contacted part of the victim at all.[26] We have no reason to suppose that the Council intended the word "touching" to have different meanings in the two places it is used in the ASAA.

Third, adopting the restrictive definition of "touching" that appellant proposes would tend to undercut the overriding legislative policy of the ASAA to protect children, minors, and other persons from all kinds of sexual abuse.[27] We

---

[25] D.C. Code § 22-3001(9) (2012 Repl. & 2020 Supp.).

[26] This court has been presented with such cases. *See, e.g.*, *Olafisoye v. United States*, 857 A.2d 1078 (D.C. 2004) (touching of victim's genitalia with a vacuum cleaner hose).

[27] *See Davis*, 873 A.2d at 1106 n.9 (noting "the drafter's announced desire to 'strengthen' the District's laws against sexual abuse and make them 'more
*(continued…)*

see no reason the Council would have wanted to withhold that protection in cases where the perpetrator could commit the abusive conduct without tactile "feeling."

But as we have said, this does not mean § 22-3010.01 proscribes all affectionate or loving embracing of children or minors by persons in the requisite "significant relationship" with them. The statute does exclude ordinary hugging involving merely incidental contact with sensitive areas of the recipient's body from its purview. It does so by prohibiting only such hugging as is "intended to cause or reasonably causes" sexual arousal or sexual gratification. This, not the word "touching," is the critical limiting language in the statute. In the present case, the trial judge found that appellant *was* seeking sexual gratification and thus had the requisite intent when he "held [A.G.] very close so that there was a touching of the breast and genitalia area." The question before us is whether the government presented sufficient evidence to support that *mens rea* finding.[28]

---

*(continued…)*
inclusive, flexible and reflective of the broad range of abusive conduct which does in fact occur'" (quoting COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, BILL 10-87, THE "ANTI-SEXUAL ABUSE ACT OF 1994," at 1(1994)).

[28] We do not have occasion in this case to construe or apply the statutory prohibition of conduct that unintentionally but "reasonably" causes sexual arousal or gratification. D.C. Code § 3010.01(b). The government has not relied on that
*(continued…)*

"In challenging the sufficiency of the evidence, appellants face a difficult burden."[29]   Viewing the evidence, as we must, in the light most favorable to sustaining the factfinder's verdict, we will overturn a conviction on insufficient proof grounds only if there was "no evidence" adduced at trial "upon which a reasonable mind could find guilt beyond a reasonable doubt."[30]   In bench trials, we thus are deferential to the prerogatives and advantages of the trial judge in assessing witness credibility, drawing reasonable inferences, and weighing the evidence.[31]   We will not disturb the trial judge's factual findings unless we can conclude they were plainly wrong or without evidence to support them.[32]

Yet if our review of the sufficiency of the evidence is deferential, it is not "toothless."[33]   "We have an obligation to take seriously the requirement that the

_____

*(continued…)*

part of the statute, and the trial court made no finding that appellant's conduct fell within it.

[29]  *Bolden v. United States*, 835 A.2d 532, 534 (D.C. 2003).

[30]  *Mihas v. United States*, 618 A.2d 197, 200 (D.C. 1992) (quoting *Robinson v. United States*, 506 A.2d 572, 573 (D.C. 1986)).

[31]  *Bolden*, 835 A.2d at 534.

[32]  *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006).

[33]  *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc).

evidence in a criminal prosecution must be strong enough that a [factfinder] behaving rationally really could find it persuasive beyond a reasonable doubt."[34] This "means more than that there must be some relevant evidence in the record in support of each essential element of the charged offense. 'The fact that evidence is relevant does not automatically make it sufficient to support a criminal conviction.'"[35] There is an "important distinction between concluding that given evidence would reasonably permit a [factfinder] to infer [guilt] and concluding that the same evidence is by itself sufficient to establish [guilt] beyond a reasonable doubt."[36]

As appellant contends, it appears the trial judge based her guilty verdict in part on a factual finding that was plainly wrong and without support in the evidence—the finding that while appellant hugged A.G. on one occasion, he also

---

[34] *Id.*

[35] *Id.* (quoting Jon O. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U. L. Rev. 979, 996 (1993)).

[36] *Evans v. United States*, 122 A.3d 876, 893 (D.C. 2015).

kissed her on the neck.  This was contrary to A.G.'s own testimony that the kiss on her neck did *not* occur during a hug, and there was no evidence that it did.[37]

According to A.G., whom the judge credited, appellant gave her a few tight, "intense" and "intimate" body-to-body hugs lasting several seconds, during which his chest pressed against her breasts, and areas somewhere in the vicinity of their genitals also made physical contact.  Appellant may have complimented A.G. on her appearance while doing so.  If we were to view A.G.'s description of the hugs in isolation, as it were, we doubt we could deem it sufficient by itself to support a finding with the requisite degree of certainty that appellant embraced A.G. for purposes of sexual gratification or arousal.  To be sure, appellant crossed a line he should not have; but the patent inappropriateness of his conduct is not enough to establish that the specifics of MSA-M were sufficiently proved.  There was no testimony that appellant spoke to A.G. in a sexually provocative way during these hugs; that he had an erection while hugging her; that he caressed A.G. or kissed her in a passionate or intimate manner; that he rubbed his chest against her breasts (or

---

[37] Undoubtedly, the trial judge simply misremembered or misapprehended the testimony A.G. gave on the subject.  A.G. did say that, on one occasion, appellant kissed her *on the cheek* during an embrace.  She did not describe this kiss further.  The trial judge did not address whether she found this kiss (which for all we know may have been a momentary peck on the cheek) to be indicative of the hug's sexually passionate character.

any other part of his body against hers); that his hands touched or went near any of the parts of A.G.'s body protected by the MSA-M statute; or that appellant performed any other lewd or lascivious action beyond the tight hugs themselves.

There was additional evidence beyond the mere descriptions of the hugs, however. The relationship between appellant and A.G. was not merely friendly; it was unabashedly and overtly amorous. Appellant's text messages unambiguously expressed his strong "crav[ing]" to consummate it sexually with her as soon as possible. Appellant also evinced his frustration that A.G. was not yet eighteen; he eagerly anticipated and fantasized about the day when she would be "legally old enough." As appellant argued at trial, his sexually explicit communications with A.G. may have come later in their relationship than the embraces at issue, rather than being exactly contemporaneous with them. Perhaps that fact might diminish somewhat the probative value of the sexually tinged communications. Even so, we think that a trier of fact, taking the overall nature of the relationship and their communications into consideration, reasonably could have inferred that at least some of appellant's physically intimate and intense hugs of A.G. were motivated by his sexual craving, and that he did press his body against A.G.'s breasts and genital areas during those hugs in order to derive sexual arousal or gratification from that contact. It could be inferred that these prolonged body-to-body hugs

were indeed a manifestation of appellant's implicitly sexual desire to "put [A.G.] against the wall" and "[ge]t right up against [her]," and that they were the closest experiences he thought he could have with A.G. to appease his sexual desires until she turned eighteen.

Such inferences are plausible enough that we conclude the government did present sufficient evidence to permit, if not compel, a court to find appellant guilty of MSA-M. That conclusion comes with a caveat, however. The inferences are not for this court to draw. They are for the factfinder to consider and decide what weight to give them under the totality of the circumstances.[38] In this case, the trial judge did not explicitly address them, nor did she discuss the import of the text messages in her findings.[39] Furthermore, the judge cited few specific facts in support of her verdict, and one of the few facts the judge did mention and appear to

---

[38] "[E]ven though the evidence may be sufficient to sustain a conviction, it does not compel it. As an appellate court, we do not make findings of fact and therefore may not rule on our own reading of the evidence unaided by the trial court's findings[.]" *Lihlakha v. United States*, 89 A.3d 479, 490 (D.C. 2014).

[39] In the sentencing proceeding that followed on the heels of the verdict, the judge commented that her decision "was pretty much based on the physical behavior in this case," and that she "didn't really need the text" messages because "these things shouldn't have happened."

rely on as proof of appellant's intent to obtain sexual gratification—that appellant kissed A.G. on the neck while he hugged her—was not supported by the evidence.

Where, as here, the evidence is sufficient to support a verdict of guilty in a bench trial, but the trial judge appears to have grounded the verdict on a mistaken view of the facts without (apparently) having considered and rejected the permissible factual basis, the proper course is for this court to remand the case for the trial judge to weigh the evidence afresh.[40]

**B.**

Appellant also contends there was insufficient evidence for the trial court to find he committed an act of simple assault by kissing seventeen-year-old A.G., because the government failed to prove she did not consent to being kissed by him. Such proof was required to convict him, appellant argues, because A.G., being over sixteen years of age, was above the legal age of consent applicable to such actions. The trial judge rejected this argument, persuaded by the government that the 2007 amendments of the ASAA raised the applicable age of consent so as to

---

[40] *See, e.g.*, *Williams v. United States*, 90 A.3d 1124, 1129 (D.C. 2014); *Lihlakha*, 89 A.3d at 490; *Foster v. United States*, 699 A.2d 1113, 1115 & 1116-17 n.5 (D.C. 1997).

render a minor under the age of eighteen legally incapable of consenting to any sexual advances, including kisses, by someone who is in a "significant relationship" to her. We are not so persuaded, however.

We have construed our simple assault statute, D.C. Code § 22-404(a)(1) (2012 Repl. & 2020 Supp.), as codifying common law assault, and we have "recognized non-violent sexual touching assault as a distinct type" of such assault.[41] The elements of non-violent sexual touching, prosecuted as simple assault, are: "1. That the defendant committed a sexual touching on another person; 2. That when the defendant committed the touching, s/he acted voluntarily, on purpose and not by mistake or accident; and 3. That the other person did not consent to being touched by the defendant in that matter."[42] "Non-violent sexual touching" is not a statutorily defined term in this jurisdiction; it is not a term used either in Chapter Four of Title 22 of the D.C. Code (where simple assault and other assault offenses are grouped), or in the ASAA.

---

[41] *Mungo v. United States*, 772 A.2d 240, 245 (D.C. 2001) (citing *In re A.B.*, 556 A.2d 645, 646-47 (D.C. 1989); *Guarro v. United States*, 237 F.2d 578, 580 (D.C. Cir. 1956); *Beausoliel v. United States*, 107 F.2d 292, 296-97 (D.C. Cir. 1939)).

[42] *Id.* (quoting Criminal Jury Instructions for the District of Columbia, No. 4.06(C) (4th ed. 1993)).

In *Mungo* we said that "[n]on-violent sexual touching assault . . . is committed by the voluntary touching of another in a sexually sensitive or 'private' area without consent," and we added that it "need only consist of a touching that could offend a person of reasonable sensibility."[43]  Thus, "the proscribed act—the *actus reus*—of non-violent sexual touching can be less intimate than the behavior" defined in the ASAA as a "sexual act," "sexual contact," or "sexually suggestive conduct."[44]  Moreover, as we also explained in *Mungo*, there is a "fundamental difference" in the respective *mens rea* requirements of the common law offense of non-violent sexual touching assault and the sexual abuse offenses defined in the ASAA, in that the simple assault offense requires only "the intent to do the proscribed act."[45]  It does not require proof of an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.[46]  So while simple non-violent sexual touching assault may be a lesser-included offense of some ASAA offenses,[47] the essential elements of such a misdemeanor assault by

---

[43] *Mungo v. United States*, 772 A.2d 240, 246 (D.C. 2001) (citing *In re A.B.*, 556 A.2d at 646-47).

[44] *See id.*

[45] *Id.*

[46] *Id.*

themselves do not add up to any violation of the ASAA. The simple assault can be committed by sexual touching conduct that does not fall within the ASAA. The present case illustrates this: appellant could never have been convicted of MSA-M or any other ASAA offense for kissing A.G. in the manner it was proved he did, because such kissing (even if non-consensual, for sexual gratification, and committed by someone in a "significant relationship" with A.G.) was not "sexually suggestive conduct," a "sexual act," or a "sexual contact," within the meaning of the ASAA.

Although the prosecution generally must prove the absence of valid consent to secure a conviction for simple non-violent sexual touching assault (or other sexual assaults), it has been the "longstanding rule that a child is legally incapable of consenting to sexual conduct with an adult. . . . because [children] 'do not understand what is happening to them.'"[48] Thus, "[i]f the complainant was a child

---

*(continued…)*

[47] *See id.* (holding that the ASAA offense of misdemeanor sexual abuse, which requires proof of a sexual act or contact, "includes all of the elements of non-violent sexual touching assault, plus at least one additional element of intent not found in the latter," and that non-violent sexual touching assault is, therefore, a lesser-included offense of misdemeanor sexual abuse).

[48] *Davis*, 873 A.2d at 1105 (quoting *Guarro*, 237 F.2d at 581).

at the time of the assault, . . . the defense of consent is unavailable."[49]  We have understood "the age of consent"[50] for non-violent sexual touching assault and other common law sexual assault offenses to be sixteen years.  So, for example, in *Jenkins v. United States*, 506 A.2d 1120 (D.C. 1986), where the prosecution was for a sexual assault against a seventeen-year-old complainant, we held that the trial court had erred in refusing to instruct the jury on the proffered defense of consent.[51]

---

[49]  *Id.*  In *Davis*, we concluded there was "no evidence that the Council intended to change the law so as to allow consent of a child victim to be raised as a defense in general sexual assault prosecutions under the ASAA," *id.*, and that such consent therefore was not a valid defense where the defendant was charged with violating one of the ASAA's general (i.e., not child-specific) offense provisions (misdemeanor sexual abuse, D.C. Code § 22-3006) with his eleven-year-old child. *Id.* at 1106.

[50]  *Jones v. United States*, 990 A.2d 970, 972 (D.C. 2010) (stating that sixteen is "the age of consent").

[51]  *Id.* at 1123 ("It is a settled principle that one is not guilty of a sexual assault if the other has consented to the touching of his or her person, or if there exist reasonable grounds to believe that such consent has in fact been given.  The only exceptions to this rule are designed to protect those, such as minors, who do not have the capacity to consent to intimate sexual touching.  If, therefore, complainant consented to appellant's conduct there was no assault and, if there was no assault, then there would have been no assault with intent to commit sodomy. Having failed to prove one of the two essential components of the offense, the government would have been unable to convict."  (citations omitted)).  In using the word "minors," the *Jenkins* court did not attach the same meaning to the word (of persons under eighteen years of age) later given to it by the Council when it amended the ASAA in 2007.

From its inception in 1995, the ASAA incorporated the sixteen-year-old age of consent rule and precluded consent as a defense in prosecutions under the child-specific provisions of the ASAA.[52] The ASAA said nothing about whether or when consent is a defense to non-ASAA sex offenses such as simple assault based on non-violent sexual touching. For that and any other such offenses, the Council left the common law rule unaltered.

In 2007, when the Council amended the ASAA and added MSA-M and the other new offenses extending limited protections to minors aged sixteen and seventeen, it amended the consent-defense preclusion to apply to prosecutions for those specific offenses too. In pertinent part, subsection (a) of D.C. Code § 22-3011 (2012 Repl. & 2020 Supp.) now provides that "[n]either mistake of age nor consent is a defense to a prosecution under §§ 22-3008 to 22-3010.01, prosecuted alone or in conjunction with charges under § 22-3018 [attempts] or § 22-403 [assaults with intent to commit any of the specified substantive ASAA offenses]." Thus, in a prosecution for MSA-M or one of the other minor-specific offenses, consent of the minor to a "sexual act," a "sexual contact," or "sexually suggestive

---

[52] *See* D.C. Code §§ 22-3001 (3) (definition of "child"); -3011 (2001) ("Defenses to child sexual abuse") (providing that "neither mistake of age nor consent is a defense to a prosecution under §§ 22-3008 to 22-3010, prosecuted alone or in conjunction with charges under § 22-3018 or § 22-403").

conduct" by a person in a "significant relationship" with that minor is not a defense even if the minor is over sixteen years of age.

But that does not mean the Council raised the age of consent in a simple assault prosecution for a non-violent sexual touching of a minor. In § 22-3011, the Council explicitly precluded the defense of consent in prosecutions under § 22-403 for felony assaults to commit minor-specific (and other) violations of the ASAA. But that is as far as the Council chose to go. It did not extend that preclusion of the well-established common law defense of consent to any other prosecutions for assaults of a sexual nature—let alone to misdemeanor assault prosecutions for non-violent sexual touching that (like the kissing in the present case) is *not* proscribed by the MSA-M section or any other provision in the ASAA. We have no reason whatsoever to assume the Council was ignorant of such prosecutions. And we see no basis for holding that the Council nonetheless *implicitly* amended the common law age of consent for simple non-violent sexual touching assault.[53] The statute

---

[53] The assumptions are to the contrary—the legislature is presumed to know the common law in effect before the statute was enacted, repeals by implication are disfavored, and, in general, "no statute is to be construed as altering the rules of the common law, farther than its words plainly import." *District of Columbia Pub. Sch. v. District of Columbia Dep't of Empl't Servs.*, 95 A.3d 1284, 1287-1288 (D.C. 2014) (internal quotation marks and citation omitted).

provides no notice that the non-consent element of the simple assault offense has been cut back.[54]

Accordingly, we agree with appellant that sixteen years is the age of consent for the non-violent sexual touching prosecuted as simple assault in this case, and that the trial judge's ruling that seventeen-year-old A.G. lacked the legal capacity to consent to appellant's kisses was legal error. To convict appellant of simple assault, it was the government's burden at trial to prove he kissed A.G. without her consent. As its fallback position in the event of that conclusion, the government has asked us to remand for the trial judge to make specific factual findings as to whether A.G. gave valid consent. Although we are remanding for findings regarding appellant's intent in hugging A.G., we decline to do so for this additional purpose. Such a remand would be appropriate only if the existing evidentiary record could support a finding that the government sufficiently proved lack of

---

[54] At oral argument in this appeal, the government asserted that, at common law, the age of consent was eighteen years for a non-violent sexual touching by someone in a significant relationship with the victim. The government has cited no authority for this assertion, and we are aware of none. In *Guarro*, the Circuit Court noted that, at common law, consent is "irrelevant" when sexual assaults are committed against "idiots or patients of a fraudulent doctor" as well as children, "[t]he reason [being] that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them." 237 F.2d at 581. This narrow rationale does not apply to cases like the present one.

consent.[55]  But the record could not support that finding.  It is clear from her testimony that A.G., who admittedly had a "crush" on appellant and welcomed an amorous relationship with him, was amenable to his kisses.  No reasonable trier of fact could find beyond a reasonable doubt that she found the kisses objectionable or did not consent to them.

## III.

For the above reasons, we vacate appellant's conviction for misdemeanor sexual abuse of a minor, reverse his conviction for simple assault, and remand for further proceedings in accordance herewith.

*So ordered.*

---

[55] *See Foster*, 699 A.2d at 1116.